Peb Cubiam.
 

 Upon this bill, answer, replication, and the evidence adduced on the hearing, it appears as follows: Henry Conway, now deceased, being unfortunately in frequent habits of intoxication» and when in that situation incapable of managing his affairs with economy or prudence, became somewhat embarrassed with debt, as well on his own account as by becoming a surety for others. He was indebted to the company of Hale, Dickson
 
 &
 
 Co., of which Hale, the defendant, -was the acting partner, upwards of $500. In this situation he made a conveyance of the tract of land on which he lived, with other property, to his son, Thomas Conway, under an agreement that out of it he would pay his just debts, and provide for the maintenance of himself and wife during life. The debt to Hale, Dickson & Co. not being paid, they commenced suit, recovered judgment, and the sheriff seized the land. H. Conway had only three children, Thomas Conway, the wife of James Sevier, and another daughter, Susanna. Previous to the day of * sale, Thomas Conway, having procured money sufficient to discharge the debt, thought it best to permit the land to be sold, in order more
 
 *264
 
 fully to secure the title. And it was agreed between him and James Sevier to purchase the land, 860 acres, at the sale; and to permit Henry Conway and his wife, the complainants, to enjoy it during their lives, and divide it amongst their children after their death. Before the sale, the defendant Hale, who had married the daughter of James Sevier, expressed a wish to become the purchaser, which Sevier agreed he might, under such arrangements as he could make with Thomas Conway. In pursuance of the agreement thus made, Sevier and Thomas Conway declined to bid at the sale, and Hale became the purchaser for about $3,800, and gave bond to comply with the previous stipulations: one to convey 100 acres to Susannah Se-vier, which has been since done ; another to discharge Thomas Conway from the payment of the debt due by him to the company, of more than $500. This has been done, and Conway has executed a quitclaim deed to Hale for the land sold by the sheriff to him. These are not now in dispute. But he also executed another bond, in which he bound himself to Henry Conway, and Sarah his wife, in the penalty of $5,000, with a condition which is satisfactorily proved to have been as follows: “ The condition of the above obligation is such, that if the above bounden Hugh D. Hale shall permit the said Henry Conway, and Sarah his wife, to remain on the plantation on which they now live (which plantation the said Hale hath this day purchased at the sheriff’s sale), during the term of their natural life, with the peaceable enjoyment of the dwelling house, out-houses, barn, stables and orchard, and plantation, in as full a manner as they now enjoy them, then the above obligation to be void, otherwise to remain in full force and virtue in law.” Immediately after the sheriff’s *sale, Henry Conway released and gave a receipt on the execution for the surplus of the purchase money after satisfying the execution. No part of this surplus was paid. Some time after this, Henry Conway and Hale applied to Thomas Conway, in whose hands the bond was deposited, to give it up. At that time he refused; but on hearing that his father was about to give Hale a release against it, he gave it up to Hale, who destroyed it. No compensation whatever has been given by Hale to Henry Conway, or his wife, the present complainant, for the release or surrender of the bond ; nor has she ever in any manner assented thereto. Hale said the design of taking up the bond was, that he should give another to secure Henry Conway in the possession dur
 
 *265
 
 ing his own life, in exclusion of the rights of his wife after that time. Henry Conway peaceably enjoyed the premises for about six months, and then died intestate; since his death, Hale has commenced suit by ejectment against the tenants of Sarah Conway, the widow of the deceased, to recover the possession. To enjoin Hale from proceeding at law, and secure her in the possession of the premises during life, is the object of the present bill. The principal question that arises is, whether the release or surrender of the bond by Henry Conway, in his lifetime, will bar the present complainant of her equity ?
 

 The provision for the wife of Conway was not made pursuant to a bargain in which Conway was a party ; indeed it come not out of
 
 his estate
 
 but out of the
 
 estate
 
 of the purchaser, who but for his contract with Conway, the son, and Sevier, the son-in-law of Conway the elder, would not have been permitted to make the purchase ; and certainly Conway, the elder, could have no pretense of ownership over the bond, had it been made payable to any other person than himself; but being payable to himself, the idea of its belonging wholly to him arose, and has led to
 
 *
 
 this controversy. The estate of his wife, provided for by the bond, is subsequent in point of commencement to the determination of the estate provided for himself, and over this estate of the wife he has no control. It is a rule of equity that it regards the substance, not the
 
 form
 
 of the contract, and will cause it to be executed according to the genuine meaning and intent thereof. 1 Fonb. 37,
 
 Acton
 
 v. Price, and other cases, some of which are to be found in Equity Cases Abridged. It is urged that the husband cannot be a trustee for the wife. The answer is that the doctrine is otherwise ever since the case of
 
 Carmel
 
 v. Buckle, 2 P.
 
 W.
 
 243, and 316, the case of
 
 Bennett
 
 v.
 
 Davis.
 
 But if he could not be a trustee, the court would so provide that some other person should be, rather than through a mere defect of formality destroy the effect of the contract. Then her interest could not be affected by the acts of the husband, unless it be first taken as a rule that the trustee can by his own act extinguish the rights of the
 
 cestui que trust;
 
 a position which cannot be admitted, especially as this case is circumstanced, Hale having full knowledge of the equitable title.
 

 Decree, therefore, that she shall enjoy the possession of the premises according to the bond, and that Hale be perpetually enjoined
 
 *266
 
 from suing her or her tenants for the purpose of recovering possession, and that he pay all the costs of this suit.
 

 See
 
 Hamilton
 
 v.
 
 Bishop,
 
 8 Yer. 33;
 
 Goodrich
 
 v.
 
 Bryant,
 
 5 Sneed, 325;
 
 Harris
 
 v.
 
 Union Bank of Tenn.,
 
 1 Cold. 152;
 
 Powell
 
 v.
 
 Powell,
 
 9 Hum. 477;
 
 Yarborough ex parte,
 
 1 Swan, 202; King’s Digest, 7164
 
 et seq.